JOHNSON, C.J.,
dissents and assigns reasons.
hi respectfully dissent, finding plaintiffs’ claim for “negligent credentialing” falls within the scope of the LMMA.
The LMMA and its limitations on tort liability for qualified health care providers apply strictly to claims “arising from medi *528 cal malpractice.” Dupuy v. NMC Operating Co., 15-1754 (La. 3/15/16), 187 So.3d 436, 439. Malpractice is defined as “any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.” La. R.S. 40:1231.1(A)(13) (emphasis added). “Health care” is defined in the LMMA as “any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the 12patient’s medical care, treatment, or confinement....” La. R.S. 40:1231.1(A)(9). Although “negligent credentialing” is not specifically listed in the definition of malpractice, it is clear the LMMA was broadly written and intended to cover any act of negligence by a healthcare provider in connection with the care, treatment, and confinement of a patient. In my view, OGH’s credentialing activities are an inseparable part of the medical services Brandi received. One of a hospital’s primary functions is to provide a place in which doctors dispense health care services, and its ability to grant, deny or revoke privileges demonstrates a degree of control over the quality of medical care provided. Thus, a hospital’s decision to grant privileges to physicians to treat patients in the hospital’s care is fundamentally and inherently related to the delivery of health care and therefore related to medical treatment.
An analysis under the Coleman factors reinforces a finding that negligent credentialing falls under the LMMA. In its examination of the Coleman factors, the majority finds “the decision to hire a physician in and of itself is administrative and does not directly relate to the treatment of any given patient or involve a dereliction of professional skill.” I disagree. The duty to choose competent physicians is necessarily connected to the duty to ensure patients receive proper medical care. Thus, although credentialing itself may be administrative in nature, it is inseparable from its ultimate purpose to ensure that patients receive quality medical care and treatment. I also disagree with the majority’s analysis of the second Coleman factor because I find a claim for negligent credentialing requires expert testimony to establish the standard of care applicable to OGH’s decision to extend privileges to Dr. Zavala and to establish whether Dr. Zavala was, in fact, properly qualified for the job.
Furthermore, I find it necessary to consider that negligent credentialing alone will not result in injury to a patient unless the physician commits a negligent act. Thus, there can never be a negligent credentialing claim in the abstract, separated from | ^associated negligent treatment or some other negligent act. The harm and damages do not occur until the doctor actually commits malpractice. Brandi’s negligent credentialing claim derives from Dr. Zavala’s negligent treatment. Viewed in this light, it is clear the negligent credentialing claim is intertwined with the substantive malpractice claim under the LMMA.
The majority’s holding that negligent credentialing claims fall outside the scope of the LMMA undermines the purpose and intent of the statute by excluding from *529 coverage a service which is clearly rendered by the hospital in its role as a health care provider. OGH is now exposed to uncapped liability for the same acts of malpractice committed by Dr. Zavala, or by OGH if it failed to adequately supervise or train a physician employee, both of which would undoubtedly be covered by the LMMA. OGH’s duty to its patients is the same whether the medical care is provided by physicians directly employed by the hospital or by a physician granted courtesy emergency room privileges, such as Dr. Zavala. The majority effectively gives medical malpractice plaintiffs a back door to avoid the LMMA relative to negligent acts committed by non-employee physicians who are extended privileges to practice in a hospital. ‘ '
This court has explained that the legislature enacted the Medical Malpractice Act in 1975 in response to a perceived medical malpractice insurance crisis, See Williamson v. Hospital Service Dist. No. 1 of Jefferson, 04-0451 (La. 12/1/04), 888 So.2d 782, 785-86 (citations omitted). The legislature intended the LMMA to reduce or stabilize medical malpractice insurance rates and to assure the availability of affordable medical services to the public. Hutchinson v. Patel, 93-2156 (La. 5/23/94), 637 So.2d 415, 419. This court has further recognized that, to achieve those goals, the LMMA provides qualified health care providers two advantages in actions against them for malpractice, namely, a limit on the amount of damages and the requirement 14that the claim first be reviewed by a medical review panel before commencing suit in a court of law; Id. Plaintiffs cannot use artful pleading to avoid the LMMA’s requirements when the essence of the suit is á medical malpractice claim. “In general, any conduct by a hospital complained of by a patient is properly :within the scope Of the [Medical Malpractice Act] if it can reasonably be said that it comes within the definitions of the Act, even though there are alternative theories of liability.” Richard v. Louisiana Extended Care Centers, Inc., 02-0978, (La. 1/14/03), 835 So.2d 460, 467-468.
For the above reasons, I would hold that credentialing is directly related to the provision of health care and a claim for negligent credentialing is, therefore, not excluded from the LMMA.